In the Matter of the Probate of the Last Will and Testament of JAMES WARNOCK, Deceased.

THOMAS W. ANDERSON and ROBERT J. ANDERSON, Executors and Legatees Named in the Alleged Last Will and Testament of JAMES WARNOCK, Deceased, Appellants; ALEXANDER WARNOCK, Respondent.

*Will — when the Appellate Division will direct that issues as to testamentary capacity and undue influence be tried before a jury — when the burden of proof rests on the contestant.*

Where, on an appeal to the Appellate Division from a decree of the Surrogate's Court, made in a proceeding for the probate of a will, it appears that the disposition which should be made of the questions of fact presented by the evidence given is not free from doubt, and the result reached in the Surrogate's Court is not entirely satisfactory, the Appellate Division will send the case to a Trial Term for a jury trial.

Circumstances which, under the above-mentioned rule, require the reversal of a decree refusing to admit a will to probate, and the submission to a jury of the question whether the testator possessed testamentary capacity and whether the will was procured through undue influence exercised upon him by the legatees mentioned in the will, considered.

The contestant of a will, which is properly executed in form, must, in order to succeed, show that the will was not the free and intelligent act of the testator.

While an unnatural disposition of the testator's property in the will may be evidence, and sometimes is strong evidence, that the will was procured by undue influence, the burden still rests with the contestant.

APPEAL by Thomas W. Anderson and another, executors and legatees named in the alleged last will and testament of James Warnock, deceased, from a decree of the Surrogate's Court of the county of Washington, entered in said Surrogate's Court on the

25th day of July, 1904, refusing to admit to probate the said alleged last will and testament.

*Robert O. Bascom, Edgar T. Brackett* and *Frank H. Mason,* for the appellants.

*C. C. Van Kirk,* for the respondent.

SMITH, J.:

The determining rule for the disposition of these cases is thus expressed in the head note of *Matter of Tompkins* (69 App. Div. 474):. "Where, on an appeal to the Appellate Division from a decree of the Surrogate's Court, made in a proceeding for the probate of a will, it appears that the disposition which should be made of the questions of fact presented by the evidence given is not free from doubt, and the result reached in the Surrogate's Court is not entirely satisfactory, the Appellate Division will send the case to a Trial Term for a jury trial." The deceased was ninety-seven years old at the time of his death in January, 1903. His wife had died the September previous. He left surviving one child, a son, Alexander Warnock, who was a married man living upon a farm about twelve miles distant from the farm of the deceased. About a year before his death he and his wife had deeded to the son the home farm which was of the value of about $3,000. Prior to that, and when the son was married, he had given the son about $1,700, which is claimed by the son, however, to have been compensation for services upon the home farm up to that time. In November, after his wife's death, he sent for his nephews Thomas and Robert Anderson, living in New York city. The nephews came to him and upon the next day he assigned to them securities of the value of about $4,800. The succeeding day he went with his nephews to New York, and there remained with them until his death. Prior to his death, however, the will in question was drawn by a New York attorney, giving all of his property to the appellants. Besides these securities which had been given to the appellants here, the deceased had about $400 in the bank which would pass under the will. Upon a proceeding for the probate of the will the son contested the probate. The surrogate denied probate, holding the deceased was not competent to make. a

will, and that it was obtained by the appellants through undue influence.

Under the rule of law the contestant must make clear the fact that the will, properly executed in form, was not the free and intelligent act of its maker. While an unnatural disposition of the property in the will may be evidence, and sometimes is strong evidence, that the will was unduly procured, the burden still rests with the contestant. The record discloses no room for doubt that the testator's wife was a clear-headed, capable woman. There is evidence to the effect that before her death it was talked between the deceased and his wife that after her death he should go and live with his nephews, the appellants here, and that the son should receive no more of the father's property than he had already received. This would seem to be corroborated by the remarks of the deceased after the death of his wife to the effect that he supposed Thomas, one of these appellants, would not now want him to go and live with him because he had a young wife. If, then, it proves to have been the deliberate plan of the deceased and his wife before her death that the deceased should live after her death with his nephews, and that the son should have no more property than he already had, the final disposition of the property has an entirely different significance than it would have if made pursuant to an intention formed after the death of the wife and after the visit of the nephews. The testimony of the witnesses as to his acts and conversations in New York would seem to indicate that the deceased had a disposing mind. Some of the evidence as to his acts and conversations prior to his going to New York would seem to indicate a mistaken notion on his part of the moral obligation due to his son. It is, perhaps, fair to infer from the evidence that the relations of the father and mother with the son's wife were not of the most cordial nature. Whether or not such relations were sufficient to justify the determination of the deceased to live with his nephews after his wife's death, or to justify the final transfer to them of his property, is a question of fact which must be determined as such. As this case must be again tried, we are not disposed to discuss the facts at any length, or to express any opinion thereon other than to express our conclusion that the question of the testator's competency is not free from doubt, and that a verdict of the jury would, to our minds, be a

more satisfactory determination of that question. The decree of the surrogate of Washington county, therefore, must be reversed upon the facts, and the issues ordered to be tried by a jury at the next Trial Term of the Supreme Court in the county of Washington, with costs of the appeal to abide the event of the new trial. The material questions to be submitted to the jury upon such trial are: *First,* at the time of the making of the alleged will did James Warnock understand the nature and extent of his property and the nature and quality of the claims to his bounty of his son and any other persons? *Second,* was the will procured through undue influence exercised upon James Warnock either by or in behalf of the nephews, the legatees named in the will?

All concurred.

Decree of the surrogate reversed upon the facts, and the issues ordered to be tried by a jury at the next Trial Term of the Supreme Court in Washington county, with costs of appeal to abide event of new trial. The material questions to be submitted to the jury upon such trial are: *First,* at the time of the making of the alleged will did James Warnock understand the nature and extent of his property and the nature and quality of the claims to his bounty of his son and any other persons? *Second,* was the will procured through undue influence exercised upon James Warnock either by or in behalf of the nephews, the legatees named in the will?